FILED
2012 NOV 30 PM 3:16
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY:_____

1  John Peterson (SBN 179343)
   Timothy L. Warnock (admitted pro hac vice)
2  Riley Warnock & Jacobson PLC
   1906 West End Avenue
3  Nashville, Tennessee 37203
4  Telephone: 615-320-3700
   E-mail: jpeterson@rwjplc.com, twarnock@rwjplc.com
5
6  Attorneys for Defendants / Counter-Plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

MMO Music Group, Inc.

   Plaintiff,

   v.

Warner/Chappell Music, Inc.,
Warner-Tamerlane Publishing Corp.,
WB Music Corp., Unichappell
Music Inc., Rightsong Music, Inc.
Cotillion Music, Inc., Walden Music,
Inc., and House of Gold Music,
Inc., d/b/a "Warner House of Music"

   Defendants.
-------------------------------------------------
MMO Music Group, Inc.

   Counter-Defendant,

   v.

Warner/Chappell Music, Inc.,
Warner-Tamerlane Publishing Corp.,
WB Music Corp., Unichappell
Music Inc., Rightsong Music, Inc.
Cotillion Music, Inc., Walden Music,
Inc., and House of Gold Music,
Inc., d/b/a "Warner House of Music"

CASE NO. CV12-3300 CAS (AJWx)

**DEFENDANTS' FIRST AMENDED ANSWER TO PLAINTIFF'S COMPLAINT**

**COUNTER-PLAINTIFFS' FIRST AMENDED COUNTERCLAIM AGAINST MMO MUSIC GROUP, INC.**

Riley, Warnock & Jacobson, PLC

| | |
|---|---|
| Counter-Plaintiffs. | ) |
| Warner/Chappell Music, Inc., Warner-Tamerlane Publishing Corp., WB Music Corp., Unichappell Music Inc., Rightsong Music, Inc. Cotillion Music, Inc., Walden Music, Inc., and House of Gold Music, Inc., d/b/a "Warner House of Music" | ) ) ) ) ) ) ) ) **COUNTER-PLAINTIFFS' FIRST AMENDED COUNTERCLAIM AGAINST IRV KRATKA** |
| Counter-Plaintiffs, | ) |
| v. | ) **JURY DEMAND** |
| Irv Kratka, | ) |
| Counter-Defendant. | ) |

Defendants / Counter-Plaintiffs Warner/Chappell Music, Inc., Warner-Tamerlane Publishing Corp., WB Music Corp., Unichappell Music Inc., Rightsong Music, Inc. Cotillion Music, Inc., Walden Music, Inc., and House of Gold Music, Inc., d/b/a "Warner House of Music" (collectively "WCM"), answer to the claims of MMO Music Group, Inc. ("MMO") as follows:

### FIRST DEFENSE

MMO's Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

MMO's Complaint improperly seeks a declaration based on past infringing conduct.

### THIRD DEFENSE

MMO's declaratory judgment claim of "non-infringement" is mooted by WCM's counterclaim that MMO infringed WCM's copyrights.

### FOURTH DEFENSE

MMO's claims are barred by their illegal conduct.

### FIFTH DEFENSE

MMO failed to identify all the copyrights at issue that it seeks a declaration upon.

### SIXTH DEFENSE

MMO's claims are barred because MMO has infringed WCM's copyrights.

### SEVENTH DEFENSE

MMO's claims are barred in whole or in part by lack of standing and/or a failure to meet necessary preconditions prior to filing.

### EIGHTH DEFENSE

MMO's claims and request for equitable relief are barred by the doctrines of estoppel and unclean hands.

### NINTH DEFENSE

MMO is not entitled to attorneys' fees under the Copyright Act.

### TENTH DEFENSE

MMO's claims and request for equitable relief are barred by the failure to obtain permission, authorization, consent, and/or a license, either expressly, by

3

FIRST AMENDED ANSWER AND COUNTERCLAIM

implication or by conduct, from WCM.

## Responses to Specific Allegations in the Complaint (Doc. No. 1)

1. WCM admits that this Court has jurisdiction over the subject matter of this action.

2. WCM admits that MMO produces and sells karaoke recordings under the trade names "Pocket Songs," "Just Tracks," and "Singer's Dream Karaoke." WCM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 2.

3. WCM admits the allegations of Paragraph 3 of the Complaint.

4. WCM denies the allegations of Paragraph 4 of the Complaint.

5. WCM denies the allegations of Paragraph 5 of the Complaint.

6. WCM admits the allegations of Paragraph 6 of the Complaint.

7. WCM admits the allegations of Paragraph 7 of the Complaint.

8. WCM admits the allegations of Paragraph 8 of the Complaint.

9. WCM admits that Warner/Chappell Music, Inc. entered into the "License Agreements" with MMO, including the "Addenda." The "License Agreements" and "Addenda" expired on or before December 4, 2010. The "License Agreements" and "Addenda" were subject to the express condition that MMO "obtain fully executed licenses from our co-publishers, absent which any exploitation hereunder shall be deemed copyright infringement." The "License Agreements" and "Addenda" granted non-exclusive, limited rights, subject to numerous conditions.

WCM denies that MMO fulfilled its obligations under the License Agreements and Addenda. WCM denies the remaining allegations of Paragraph 9 of the Complaint.

10. WCM admits that MMO remitted a check for $50,000, but denies that that payment was "an advance payment of fees and royalties for future karaoke license fees." WCM specifically responds that the $50,000 payment was an initial settlement payment by MMO, to be applied against a total settlement obligation of $250,000.00, for MMO's prior unlicensed conduct. WCM admits that MMO paid approximately $36,000 to Warner/Chappell Music, Inc. after 2008 pursuant to existing licenses, but WCM denies that MMO honored all of its obligations under the agreed upon licenses. WCM denies the remaining allegations of Paragraph 10 of the Complaint.

11. WCM admits that the compositions listed in Paragraph 11 of the Complaint are owned and/or exclusively administered by WCM. WCM admits that the compositions listed in Paragraph 11 of the Complaint have been recorded and distributed by MMO. WCM denies the remaining allegations of Paragraph 11 of the Complaint.

12. WCM denies the allegations of Paragraph 12 of the Complaint.

13. WCM repeats and realleges each of their responses to paragraphs 1 through 12 of MMO's Complaint as if fully set forth herein.

14. WCM admits that they allege MMO has committed copyright infringement and is liable for actual and/or statutory damages pursuant to the

5

FIRST AMENDED ANSWER AND COUNTERCLAIM

Copyright Act. WCM denies the remaining allegations of Paragraph 14 of the Complaint.

15. WCM denies the allegations of Paragraph 15 of the Complaint.

16. The remainder of MMO's Complaint, being merely prayers for relief, requires no response. Notwithstanding, WCM denies that MMO is entitled to any form of relief.

## FIRST AMENDED COUNTERCLAIM

Defendants / Counter-Plaintiffs Warner/Chappell Music, Inc., Warner-Tamerlane Publishing Corp., WB Music Corp., Unichappell Music Inc., Rightsong Music, Inc. Cotillion Music, Inc., Walden Music, Inc., and House of Gold Music, Inc., d/b/a "Warner House of Music" (collectively, "WCM"), assert the following Counterclaim for injunctive relief and damages against Counter-Defendant, MMO Music Group, Inc. ("MMO", a New York corporation, and Counter-Defendant Irv Kratka (collectively, the "MMO Defendants"):

1.  Defendant/Counter-Plaintiff Warner/Chappell Music, Inc. is a Delaware corporation, with offices located at 10585 Santa Monica Blvd., Los Angeles, CA 90025-4950.

2.  Defendant/Counter-Plaintiff Warner-Tamerlane Publishing Corp. is a California corporation, with offices located at 10585 Santa Monica Blvd., Los Angeles, CA 90025-4950.

3.  Defendant/Counter-Plaintiff WB Music Corp. is a California corporation, with offices located at 10585 Santa Monica Blvd., Los Angeles, CA 90025-4950.

4.  Defendant/Counter-Plaintiff Unichappell Music Inc. is a Delaware corporation, with offices located at 10585 Santa Monica Blvd., Los Angeles, CA 90025-4950.

7
FIRST AMENDED ANSWER AND COUNTERCLAIM

5. Defendant/Counter-Plaintiff Rightsong Music, Inc. is a Delaware corporation, with offices located at 10585 Santa Monica Blvd., Los Angeles, CA 90025-4950.

6. Defendant/Counter-Plaintiff Cotillion Music, Inc. is a Delaware corporation, with offices located at 10585 Santa Monica Blvd., Los Angeles, CA 90025-4950.

7. Defendant/Counter-Plaintiff Walden Music, Inc. is a New York corporation, with offices located at 10585 Santa Monica Blvd., Los Angeles, CA 90025-4950.

8. Defendant/Counter-Plaintiff House of Gold Music, Inc., d/b/a "Warner House of Music," is a Delaware Corporation with offices located at 10585 Santa Monica Blvd., Los Angeles, CA 90025-4950.

9. Plaintiff/Counter-Defendant MMO Music Group, Inc. a New York corporation, is a corporation existing under the laws of the State of New York with its principal place of business in the city of Elmsford, State of New York. MMO conducts business throughout the world through its distribution of the *"Pocket Songs," "Just Tracks"* and *"Singer's Dream Karaoke"* brand of karaoke recordings.

10. Counter-Defendant Irv Kratka is a citizen and resident of the State of New York, residing at 16 Rockledge Avenue, Ossining, New York, 10562-6589, and participates in the unlawful distribution and sale of WCM copyrights embodied in, among other things, unlicensed recordings and karaoke products by virtue of his

8

FIRST AMENDED ANSWER AND COUNTERCLAIM

authorizing such infringing conduct and personally participating and receiving financial benefits as owner of Counter-Defendant MMO from the sale of unlicensed recordings and karaoke products. Upon information and belief, Kratka is the President and CEO of Counter-Defendant MMO.

## FACTUAL BACKGROUND

11. Karaoke, which means "empty orchestra" in Japanese, is a multi-million dollar business. Most of the revenue derived in the United States is from sales of recordings of already popularized music through various national distributors and "authorized dealers." The MMO Defendants are among the leading competitors in the business.

12. Karaoke "CD+G" and "SCD+G" recordings are actually re-recordings of hit songs, with the lead vocal tracks either omitted (instrumental) so that the consumer can "sing along" as if he/she were the lead singer or, in the alternative, with a vocal track sung by sound-alike artists (learning track) which in some formats can be muted upon playback so that the karaoke recording may be listened to either with or without a lead vocal accompaniment. These products are recorded and encoded to provide a contemporaneous video display of the lyrics to the song for the consumer to sing along.

13. Interactive internet websites like the ones utilized by the MMO Defendants are used to advertise, distribute and sell by presenting graphic images of karaoke discs, machines, and other software and hardware to facilitate distribution

Riley, Warnock & Jacobson, PLC

by stimulating or inducing the purchase of the unlicensed karaoke recordings contained therein. The karaoke recordings have included, but are not limited to, the unlicensed recordings of the Subject Works. The MMO Defendants also utilize interactive social networking sites such as Facebook, Twitter and YouTube and "online catalogs," to promote and advertise unlicensed recordings of the Subject Works.

14. The songs identified in Paragraph 11 of MMO's Complaint are copyrighted works that were, at one time, the subject of some of Warner/Chappell Music, Inc.'s "License Agreements" and "Addenda" with MMO, but WCM specifically answers that those License Agreements and/or Addenda have long since expired and not been renewed. WCM affirmatively states that MMO's exploitation of the copyrighted works identified in Paragraph 11 of MMO's Complaint, which works are re-listed as Exhibit 1 to this Counterclaim, continued well beyond the expiration of any License Agreement and/or Addenda issued to MMO. MMO admits, by its affirmative allegations in its Complaint, that the Subject Works listed on Exhibit 1 are owned and/or exclusively administered by WCM. MMO admits, by the affirmative allegations in its Complaint, that it has recorded and distributed the Subject Works listed on Exhibit 1.

15. MMO has breached the License Agreements and Addenda by failing to to pay agreed fixing fees, and among other things, by failing to pay proper "Royalties" as defined in the "License Agreements" and "Addenda." Additionally,

10
FIRST AMENDED ANSWER AND COUNTERCLAIM

the MMO Defendants have infringed the same Subject Works by exploiting some of the works without obtaining licensing approval and has infringed all of the works by exploiting them after any License Agreement and/or Addenda expired without being renewed.

16. Any claimed right by the MMO Defendants to exploit the Subject Works listed on Exhibit 1 with WCM's permission expired on or before December 4, 2010. Notwithstanding demands to cease and desist such exploitation, MMO Defendants continue to exploit the Subject Works on Exhibit 1. MMO Defendants' exploitation of the Subject Works listed on Exhibit 1 has infringed and continues to infringe WCM's copyrights.

17. In September 2008, and reiterated during the period of 2008 through the end of 2010, MMO made a clear and unambiguous promise to WCM that MMO would tender a payment of $250,000 to WCM for "many songs [MMO was] interested in licensing from [WCM] and also the back catalog of product we need licenses on." WCM relied on this promise by continuing to attempt to negotiate a licensing platform and withholding a lawsuit against MMO for copyright infringement. WCM's reliance was both reasonable and foreseeable. Subsequently, MMO failed to pay the $250,000. WCM has been injured by their reliance on MMO's promise.

18. The Subject Works identified on Exhibit 2 attached hereto, are unlicensed karaoke recordings appearing on various brands of karaoke discs which

were manufactured, distributed, advertised and/or sold by the MMO Defendants without permission from WCM. The Subject Works on Exhibit 2 are not part of any license, whether implied or express, between the parties. Exhibit 2 specifically identifies the particular copyrights owned or administered by WCM contained on the unlicensed brands which have been unlawfully advertised, distributed and/or sold by the MMO Defendants.

19. Since the 1990's, the MMO Defendants advertised, sold and/or distributed numerous illegal karaoke discs containing WCM's copyrights that are at issue in this lawsuit. In September of 2008, after lengthy negotiations and based upon MMO's promise to pay $250,000 as a settlement of prior unlicensed uses and the remittance of a $50,000 payment towards settlement for its unlicensed uses, WCM was induced to forebear from instituting suit.

20. A fundamental legal requirement for recording copyrighted material for purposes of producing a karaoke record is a license for exploitation of the song, which must be obtained from the songwriter or his agent, generally called a "music publisher," "publisher" or "administrator." The WCM parties are music publishers that own or control, in whole or in part, the copyrights in thousands of popular music compositions that have been recorded, reproduced, distributed, marketed, advertised and sold without WCM's authorization. By "control," WCM means that they are an exclusive licensee and/or possess, as administrators, the exclusive rights identified in Section 106 of the Copyright Act, as well as possess the right to

institute suit for infringement of their rights. WCM is in the business of developing and exploiting original music in conjunction with songwriters, as well as building their catalogue of music copyrights through acquisition of other catalogues. As the owners/exclusive administrators of their catalogue of music copyrights, WCM license the rights to create arrangements, record, reproduce, distribute, advertise and otherwise exploit such copyrighted musical works, in exchange for the payment of royalties or other fees customarily associated with the issuance of such licenses. WCM has not licensed the MMO Defendants to engage in the activities complained of herein.

21.  Karaoke recordings, unlike typical sound recordings, require "synchronization" licenses for the graphic display of lyrics that appear on a monitor in a synchronized presentation with the recorded music. The synchronization license typically grants rights for a mechanical reproduction of the musical composition, the use of the lyrics in synchronized graphic display, the right to use the copyright in an advertisement and/or promotional use of the composition, and may include a "print" permission for reproduction of the song's lyrics on lyric booklets or inserts in the karaoke package. Pursuant to the synchronization licenses, karaoke companies are required to pay fixing fees, advances against future royalties, and account and pay royalties based upon the total number of units manufactured, usually on a quarterly basis. The customary rates for synchronization licenses are fairly standardized.

22. Upon information and belief, the MMO Defendants solicited, advertised and conducted their infringing business operations through, though not necessarily exclusively, the interactive website www.pocketsongs.com.

23. While Warner/Chappell Music, Inc. previously granted MMO Music Group, Inc. a license to utilize WCM's music copyrights to make karaoke recordings, the MMO Defendants have nevertheless infringed WCM's copyrights by manufacturing recordings outside the scope of the permissions granted in that license and have infringed WCM's copyrights as well by engaging in the unauthorized distribution of unlicensed karaoke recordings manufactured by other parties/entities to whom the WCM has granted no permissions whatsoever and with respect to whom WCM has conferred no authority to exploit any of the exclusive rights in the Subject Works conferred by 17 U.S.C. § 106.

### Count 1: Copyright Infringement Against MMO & Irv Kratka

24. The WCM parties are music publishing companies that own and/or administer, together with their affiliates and subsidiaries, the rights in millions of music copyrights throughout the world. The WCM parties either own the copyrights, in whole or in part or, alternatively, are an exclusive licensee or exclusive administrator and thereby own or control one or more of the exclusive rights conferred by Section 106 of the Copyright Act in and to each of the copyrights listed on Exhibits 1 and 2 ("Subject Works"), or has owned/controlled such during the three-year period immediately preceding the filing of this suit during

14
FIRST AMENDED ANSWER AND COUNTERCLAIM

which the MMO Defendants' infringement occurred. All of the Subject Works are registered with the United States Copyright Office.

25. All of the Subject Works identified herein contain material wholly original and are copyrightable subject matter under the laws of the United States.

26. The MMO Defendants have infringed WCM's rights in the Subject Works by being involved in the manufacture, creation, advertisement, distribution and/or sale of unlicensed musical compositions including, but not limited to, one or more of the Subject Works. MMO Defendants' infringing conduct has involved the continued exploitation of those Subject Works on Exhibit 1 after expiration of any licensing provisions and for the Subject Works on Exhibit 2, no license or permission ever existed.

27. MMO Defendants have been and are currently involved in the distribution and sale of unlicensed karaoke products embodying WCM's copyrights, including but not limited to one or more of the Subject Works, to the extent that they distribute or sell the unlicensed recordings made by them to, among others, downstream karaoke companies which further distribute/re-sell the unlicensed products.

28. MMO Defendants have infringed WCM's copyrights by manufacturing recordings outside the scope of the permissions granted and have infringed WCM's copyrights by engaging in the unauthorized distribution of unlicensed karaoke

recordings manufactured by other parties/entities to whom the WCM have granted no permissions whatsoever.

29. The advertising, distribution and sale of unlicensed recordings utilizing WCM's copyrighted works, including the Subject Works, is a clear violation of WCM's exclusive reproduction and distribution rights under § 106 of the Copyright Act and is an infringement within an advertisement, to induce consumers to buy the unlicensed karaoke products advertised and offered for sale therein.

30. Therefore, upon information and belief, since at least as early as September of 2009, MMO Defendants have been participating in one or more of the following courses of infringing conduct: the reproduction, distribution, advertising, display, promotion and/or offering for sale for the purpose of inducing purchases, of illegal and unauthorized copies of one or more of the Subject Works. The advertising of MMO Defendants, whether by facsimile, Internet, direct mail, or other electronic means, materially contributes to the infringement of the WCM's exclusive rights to the Subject Works and materially contributes to the WCM's injury.

31. Alternatively, MMO Defendants have materially contributed to and induced the unlawful use of WCM's copyrighted works by failing to exercise their respective rights and abilities to control the conduct of those responsible for the infringement, thereby deriving a financial benefit from the infringement. MMO Defendants have infringed WCM's exclusive rights to the Subject Works and MMO

Riley, Warnock & Jacobson, PLC

Defendants' conduct was either intentional and undertaken with a complete disregard of WCM's rights or, alternatively, the MMO Defendants' conduct was willful and undertaken with actual or constructive notice that it was in violation of WCM's rights and done nevertheless in reckless disregard of WCM's copyright interests.

32. WCM is entitled to an injunction restraining the MMO Defendants, their officers, agents and employees, and all persons acting in concert with them, from engaging in any further such willful acts in violation of the copyright laws. WCM is further entitled to recover from the MMO Defendants the damages, including attorneys' fees, they have sustained and will sustain, and any gains, profits and advantages obtained by the MMO Defendants as a result of their acts of infringement alleged above. At present, the amount of such damages, gains, profits and advantages cannot be fully ascertained by WCM. Alternatively, WCM is entitled at their election to an award of statutory damages, attorney's fees and costs based upon the MMO Defendants' acts of infringement alleged above.

33. The conduct of MMO Defendants constitutes direct, contributory, vicarious and willful infringement of WCM's music copyrights. The natural, probable and foreseeable result of MMO Defendants' wrongful conduct has been and will continue to be to deprive WCM of the benefits of their rights to distribute and sell the Subject Works, to deprive WCM of the usual and customary royalties to which they would be entitled if the Subject Works were properly licensed with

synchronization licenses, or advertising/promotional licenses, and to deprive WCM of goodwill.

34. MMO Defendants' infringement was willful and undertaken with actual or constructive notice that it was in violation of WCM's rights or, in the alternative, was done nevertheless in reckless disregard of WCM's copyright interests.

## Count II: Breach of License Agreement Against MMO

35. Counter-Defendant Warner/Chappell Music Inc. entered into "License Agreements" and "Addenda" with MMO that granted MMO a limited, conditional, and non-exclusive right to exploit the Subject Works listed on Exhibit 1 to the Counterclaim. MMO's Complaint admits that the Subject Works listed on Exhibit 1 are owned and/or exclusively administered by Warner/Chappell Music Inc. and/or one of the WCM parties. MMO's Complaint admits that it has recorded and distributed the Subject Works listed on Exhibit 1.

36. MMO has breached the License Agreements and Addenda by by failing to pay agreed fixing fees, and among other things, by failing to pay proper "Royalties" as defined in the "License Agreements" and "Addenda."

37. Warner/Chappell Music Inc. has been damaged by MMO's breach in an amount to be determined at trial.

Riley, Warnock & Jacobson, PLC

### Count III: Promissory Estoppel Against MMO

38. In September 2008, and reiterated during the period of 2008 through the end of 2010, MMO made a clear and unambiguous promise to WCM that MMO would tender a payment of $250,000 to WCM for "many songs [MMO was] interested in licensing from [WCM] and also the back catalog of product we need licenses on." WCM relied on this promise by continuing to attempt to negotiate a licensing platform and withholding a lawsuit against MMO for copyright infringement. WCM's reliance was both reasonable and foreseeable. MMO failed to pay the $250,000. WCM has been injured by their reliance on MMO's promise. WHEREFORE, WCM respectfully prays for entry of judgment and injunctive relief in their favor as described herein.

### JURY DEMAND

WCM hereby demands trial by jury on all issues triable to a jury.

Respectfully submitted,

_____
John Peterson (State Bar No. 179343)
Timothy L. Warnock (pro hac vice)
Riley Warnock & Jacobson PLC
1906 West End Avenue
Nashville, Tennessee 37203
Telephone: 615-320-3700
Facsimile: 615-320-3737
E-mail: jpeterson@rwjplc.com,
twarnock@rwjplc.com

Attorneys for Defendants/Counter-Plaintiffs

# CERTIFICATE OF SERVICE

I, Timothy L. Warnock, hereby certify that on November 30, 2012, I served the foregoing upon all counsel of record by U.S. Mail.

*/s/ Timothy J. Warnock*